**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LAWRENCE TALLEY,

               Plaintiff,

          vs.

MIRATI THERAPEUTICS, INC.,
FAHEEM HASNAIN, CHARLES BAUM,
BRUCE CARTER, JULIE
CHERRINGTON, AARON DAVIS,
CAROL GALLAGHER, CRAIG
JOHNSON, MAYA MARTINEZ-DAVIS,
and SHALINI SHARP,

               Defendants.

Case No.: '23CV2055 H    AHG

**Complaint For:**

(1) Violation of § 14 (a) of the Securities Exchange Act of 1934
(2) Violation of § 20(a) of the Securities Exchange Act of 1934

**JURY TRIAL DEMANDED**

     Plaintiff, Lawrence Talley ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

     1.    Plaintiff brings this stockholder action against Mirati Therapeutics, Inc. ("Mirati" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Bristol-Myers Squibb Company ("Parent") through merger vehicle Vineyard Merger Sub Inc. ("Merger

Sub", collectively with Parent, "BMS"), as a result of an unfair process, and to enjoin an upcoming vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an October 10, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Mirati will become an indirect wholly-owned subsidiary of BMS.  As a result of the Transaction, Mirati public stockholders will receive for each share of Mirati common stock owned (i) $58.00 per share in cash, and (ii) one Contingent Value Right ("CVR") which may result in additional consideration of up to $12.00 depending on whether certain milestones are reached by Mirati. As a result, Mirati common stockholders will be frozen out of ownership interest in the Company.

3.     Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.

4.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Definitive Proxy Statement on November 2, 2023, with the SEC in an effort to solicit public stockholders such as Plaintiff to vote his Mirati shares in favor of the Proposed Transaction. The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Mirati, provided by the Company to the Company's financial advisors Centerview Partners, LLC ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview and provided to the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

5.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

6.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Mirati stockholder.

7.      Defendant Mirati is a commercial-stage oncology company that develops novel therapeutics to address the genetic and immunological promoters of cancer in the United States. Mirati is incorporated under the laws of the State of Delaware and has its principal place of business at 3545 Cray Court, San Diego, CA 92121.  Shares of Mirati common stock are traded on the NASDAQ exchange under the symbol "MRTX".

8.      Defendant Faheem Hasnain ("Hasnain") has been a director of the Company at all relevant times.  In addition, Hasnain serves as the Company's Chairman of the Board of Directors and Lead Independent Director.

9.      Defendant Charles Baum ("Baum") has been a Director of the Company at all relevant times.  In addition, Baum serves as the Company's President and Chief Executive Officer ("CEO") and is the Company's founder.

10.     Defendant Bruce Carter ("Carter") has been a director of the Company at all relevant times.

11.     Defendant Julie Cherrington ("Cherrington") has been a director of the Company at all relevant times.

12.     Defendant Aaron Davis ("Davis") has been a director of the Company at all relevant times.

13.     Defendant Carol Gallagher ("Gallagher") has been a director of the Company at all relevant times.

14.     Defendant Craig Johnson ("Johnson") has been a director of the Company at all relevant times.

15. Defendant Maya Martinez-Davis ("Martinez-Davis") has been a director of the Company at all relevant times.

16. Defendant Shalini Sharp ("Sharp") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 8 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Parent discovers, develops, licenses, manufactures, markets, distributes, and sells biopharmaceutical products worldwide. Parent is incorporated under the laws of the State of Delaware and has its principal place of business at Route 206 and Province Line Road, Princeton, NJ 08543. Shares of Parent common stock are traded on the New York Stock Exchange under the symbol "BMY".

19. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Mirati maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Mirati is a commercial-stage oncology company that develops novel therapeutics to address the genetic and immunological promoters of cancer in the United States.

24.     The Company provides KRAZATI, an oral targeted treatment option for adult patients with KRAS G12C-mutated locally advanced or metastatic non-small cell lung (NSCLC), as well as in clinical development as a monotherapy and in combination with other agents.

25.     Mirati also develops Sitravatinib, an investigational spectrum-selective kinase inhibitor in Phase 3 clinical development that inhibits receptor tyrosine kinases (RTKs), including TAM family receptors, split family receptors, and RET, which overcomes resistance to checkpoint inhibitor therapy through targeted reversal of an immunosuppressive tumor microenvironment that enhances antigen-specific T cell response and expanding dendritic cell-dependent antigen presentation.

26.     In addition, the Company pipeline comprises the MRTX1719, an investigational synthetic lethal PRMT5 inhibitor designed to target the PRMT5/methylthioadensoine (MTA) complex and is in clinical development; MRTX0902, a selective SOS1 inhibitor that improves anti-tumor efficacy in combination with targeted mitogen-activated protein kinase (MAPK)-pathway inhibitors, and is in clinical development; and MRTX1133, an investigational lead KRAS G12D compound.

27.     Mirati also has a collaboration and license agreement with BeiGene, Ltd. to develop, manufacture, and commercialize sitravatinib; and Zai Lab Ltd. to research, develop, manufacture, and commercialize adagrasib in various indications.

28.     The Company's most recent performance press release prior to the announcement of discussions with BMS, revealing positive results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid clinical and financial performance that would yield significant growth in the future.  For example, in the August 8, 2023 press release

announcing its 2023 Q2 financial results, the Company highlighted various milestones regarding its pipeline products Adagrasib, MRTX1719, MRTX1133, MRTX0902, and Sitravatinib.

29.     Speaking on these positive results, Company President and CEO Defendant Baum stated as follows, "We are pleased to share the significant progress made during the second quarter of 2023, highlighted by an update to the clinical data and articulation of our path to develop KRAZATI® in front line non-small cell lung cancer (NSCLC). Coupled with strong second quarter KRAZATI sales performance, these data reinforce our belief that KRAZATI is the best-in-class KRAS$^{G12C}$ inhibitor with significant potential to positively impact the lives of patients living with cancer."

30.     Defendant Baum continued, touching on the strong likelihood of future success for the Company, by stating,

31.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Mirati.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

32.     Despite this upward trajectory, the Individual Defendants have caused Mirati to enter into the Proposed Transaction without providing requisite information to Mirati stockholders such as Plaintiff.

***The Flawed Sales Process***

33.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

34.     First and foremost, the Definitive Proxy Statement fails to adequately disclose the reasoning as to why the Board agreed to a transaction in which a significant portion of the consideration payable is in the form of a non-guaranteed CVR.

35.     The Definitive Proxy Statement fails to adequately disclose the identity of the Directors who sat on the "Transaction Committee" which was initially created to run the sales

process, nor does it properly disclose the powers of that committee, and specifically, if it was empowered to veto a potential transaction not in the best interest of shareholders.

36.    Additionally, the Definitive Proxy Statement fails to adequately explain why it was necessary to form a subsequent "New Transaction Committee" to replace the original Transaction Committee.  Furthermore, the New Transaction Committee was clearly not composed solely of independent directors as Defendant Baum was allowed to sit on it.  Finally, the Definitive Proxy Statement fails to adequately disclose the powers of the New Transaction Committee, and specifically, if it was empowered to veto a potential transaction not in the best interest of shareholders.

37.    In addition, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and BMS and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

38.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

39.    On October 8, 2023, Mirati and BMS issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**PRINCETON & SAN DIEGO – October 8, 2023 –** Bristol Myers Squibb (NYSE: BMY) and Mirati Therapeutics, Inc.® (NASDAQ: MRTX) today announced that they have entered into a definitive merger agreement under which Bristol Myers Squibb has agreed to acquire Mirati for $58.00 per share in cash, for a total equity value of $4.8 billion. Mirati stockholders will also receive one non-tradeable Contingent Value Right (CVR) for each Mirati share held, potentially worth $12.00 per share in cash, representing an additional $1.0 billion of value

opportunity. The transaction was unanimously approved by both the Bristol Myers Squibb and the Mirati Boards of Directors.

Mirati is a commercial stage targeted oncology company whose mission is to discover, design and deliver breakthrough therapies to transform the lives of patients with cancer and their loved ones. Mirati's assets are a strong fit with Bristol Myers Squibb's portfolio and innovative pipeline and represent an attractive opportunity to grow Bristol Myers Squibb's oncology franchise. Through this acquisition, Bristol Myers Squibb will add KRAZATI, an important lung cancer medicine, to its commercial portfolio. The company gains access to several promising clinical assets that complement its oncology pipeline and are strong candidates for single agent development and combination strategies.

Mirati's portfolio includes:

- KRAZATI (adagrasib), which was granted accelerated U.S. Food and Drug Administration (FDA) approval for the treatment of adult patients with KRASG12C-mutated locally advanced or metastatic Non-Small Cell Lung Cancer (NSCLC) who have received at least one prior systemic therapy. KRASG12C mutations represent one of the most frequent alterations in NSCLC, accounting for approximately 14% of all NSCLC patients. KRAZATI also has several attributes that position it favorably versus other KRASG12C inhibitors, including its long half-life, and its demonstrated ability to be combined with a PD-1 inhibitor in first-line treatment of NSCLC in Phase 1 and 2 clinical trials. Adagrasib has shown central nervous system (CNS) penetration and intracranial responses in patients with active and untreated brain metastases.

  Additionally, it has shown strong efficacy data as a second- and third-line treatment for patients with colorectal cancer in combination with cetuximab, and as a monotherapy in previously treated pancreatic ductal adenocarcinoma. Plans are underway to work with regulators to bring adagrasib to patients in these treatment settings in the near future;

- MRTX1719, a potential first-in-class MTA-cooperative PRMT5 inhibitor in Phase 1 development has shown encouraging early efficacy data across several tumor types with MTAP deletion, including NSCLC, cholangiocarcinoma (bile duct cancer) and melanoma, with no evidence to date of meaningful hematologic toxicities associated with non-selective PRMT5 inhibitors. MRTX1719 targets MTAP-deleted tumors that comprise approximately 10% of all cancers. Phase 2 clinical trial initiation for MRTX1719 is expected in the first half of 2024;

- A leading KRAS and KRAS enabling program, including MRTX1133 and MRTX0902. MRTX1133 targets the KRASG12D mutation, which is implicated in key tumor types, such as pancreatic cancer, NSCLC and colorectal

cancer. MRTX0902 is a SOS1 inhibitor in Phase 1 clinical development with the potential for combination use with other agents targeting the MAPK/RAS pathway, including KRAZATI. The KRASG12D mutation is implicated in over 30% of pancreatic cancer patients, a disease with high unmet medical need.

"We are excited to add these assets to our portfolio and to accelerate their development as we seek to deliver more treatments for cancer patients," said Giovanni Caforio, Chief Executive Officer and Board Chair, Bristol Myers Squibb. "With a strong strategic fit, great science and clear value creation opportunities for our shareholders, the Mirati transaction is aligned with our business development goals. Importantly, by leveraging our skills and capabilities, including our global commercial infrastructure, we will ensure patients globally can benefit from Mirati's portfolio of innovative medicines."

"With multiple targeted oncology assets including KRAZATI, Mirati is another important step forward in our efforts to grow our diversified oncology portfolio and further strengthen Bristol Myers Squibb's pipeline for the latter half of the decade and beyond," said Chris Boerner, Ph.D., Executive Vice President and Chief Operating Officer and Chief Executive Officer-Elect, Bristol Myers Squibb. "Today's news builds upon our long legacy of delivering breakthrough therapies that transform the lives of people with cancer. We are impressed with the science that the talented people of Mirati have driven in service of patients, and we look forward to welcoming them to Bristol Myers Squibb."

Samit Hirawat, M.D., Chief Medical Officer and Head of Global Drug Development, Bristol Myers Squibb, said, "Mirati strengthens and complements our current portfolio by adding assets focused on intrinsic tumor targets in the MTAP and MAPK pathways. We believe Mirati's assets have the potential to change the standard of care in multiple cancers, both as standalone therapies and in combination with Bristol Myers Squibb's existing pipeline. We are excited about the significant potential that this transaction creates to transform patients' lives through science around the world."

"Since our founding 10 years ago, Mirati has made significant strides in transforming the lives of patients living with cancer through the development of innovative therapies. Through our discovery and development of next-generation targeted cancer therapeutics, we have built a robust pipeline of potentially best-in-class treatments that offer renewed hope for patients," said Charles Baum, M.D., Ph.D., Founder, President and Chief Executive Officer, Mirati Therapeutics, Inc. "This transaction is a testament to the potential of our platform and to our team's hard work and dedication to changing lives. Bristol Myers Squibb's global scale, resources and commitment to innovation will enable Mirati's therapeutics to benefit more patients, faster, and deliver on our vision of unlocking the science behind the promise of a life beyond cancer. We believe that this transaction is the best way to benefit patients and maximize value for shareholders."

The transaction is expected to be treated as a business combination and to be dilutive to Bristol Myers Squibb's non-GAAP earnings per share by approximately $0.35 per share in the first 12 months after the transaction closes.

Transaction Terms and Financing

Under the terms of the merger agreement, Bristol Myers Squibb through a subsidiary will acquire all of the outstanding shares of Mirati common stock at a price of $58.00 per share in cash representing a 52% premium to the 30-day VWAP as of the unaffected October 4, 2023 close, for a total equity value of $4.8 billion corresponding to an enterprise value of approximately $3.7 billion, which accounts for approximately $1.1 billion of Mirati cash. Each Mirati stockholder will also receive one non-tradeable CVR per Mirati share, which will entitle its holder to receive a one-time potential payment of $12.00 in cash, for a total value of approximately $1.0 billion, upon acceptance by U.S. FDA of a new drug application for MRTX1719 for the treatment of either locally advanced or metastatic NSCLC in patients who have received no more than two prior lines of systemic therapy within seven years after the closing of the merger, subject to the terms and conditions contained in a contingent value rights agreement detailing the terms of the CVR.

The transaction is anticipated to close by the first half of 2024, subject to fulfillment of customary closing conditions, including approval of Mirati's stockholders and receipt of required regulatory approvals.

Bristol Myers Squibb expects to finance the acquisition with a combination of cash and debt.

Advisors

Evercore Inc. and Morgan Stanley & Co. LLC are serving as financial advisors to Bristol Myers Squibb, and Kirkland & Ellis LLP is serving as legal counsel. Centerview Partners LLC is serving as financial advisor to Mirati, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel

***Potential Conflicts of Interest***

40.     The breakdown of the benefits of the deal indicate that Mirati insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Mirati.

41.     For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares Beneficially Owned (#) | Cash Consideration for Shares Beneficially Owned ($) | Potential CVR Payment with Respect to Shares Beneficially Owned ($) |
|---|---|---|---|
| Charles M. Baum, M.D., Ph.D. | 94,214 | 5,464,412 | 1,130,568 |
| James Christensen, Ph.D. | 48,830 | 2,832,140 | 585,960 |
| Alan Sandler, M.D. | 546 | 31,668 | 6,552 |
| Ben Hickey | 17,414 | 1,010,012 | 208,968 |
| John Moriarty, Jr., J.D. | — | — | — |
| Aaron Ondrey | 1,302 | 75,516 | 15,624 |
| David Meek | 55,878 | 3,240,924 | 670,536 |
| Laurie Stelzer | — | — | — |
| Faheem Hasnain | 8,717 | 505,586 | 104,604 |
| Aaron I. Davis | 43,073 | 2,498,234 | 516,876 |
| Carol Gallagher, Pharm.D. | — | — | — |
| Craig Johnson | 6,021 | 349,218 | 72,252 |
| Maya Martinez-Davis | 6,021 | 349,218 | 72,252 |
| Bruce L.A. Carter, Ph.D. | 6,021 | 349,218 | 72,252 |
| Julie M. Cherrington, Ph.D. | — | — | — |
| Shalini Sharp | 4,162 | 241,396 | 49,944 |

42.     In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows. The Definitive Proxy Statement accounts for these awards as follows:

| Name | In the Money Options (vested) (#) | Cash Consideration for Vested In the Money Options ($) | In the Money Options (unvested) (#) | Cash Consideration for unvested In the Money Outstanding Options ($) | Potential Cash Payment for CVRs Issued with Respect to In the Money Options ($) | Eligible Options (#) | Potential Cash Payment with Respect to Eligible Options ($) |
|---|---|---|---|---|---|---|---|
| Charles M. Baum, M.D., Ph.D. | 545,706 | 20,325,049 | 2,507 | 30,936 | 6,578,556 | 170,000 | 996,200 |
| James Christensen, Ph.D. | 207,958 | 7,002,965 | 45,456 | 560,927 | 3,040,968 | 60,000 | 351,600 |
| Alan Sandler, M.D. | — | — | — | — | — | 65,000 | 655,200 |
| Ben Hickey | — | — | 45,456 | 560,927 | 545,472 | — | — |
| John Moriarty, Jr., J.D. | — | — | 83,525 | 1,012,323 | 1,002,300 | — | — |
| Aaron Ondrey | — | — | 11,844 | 146,155 | 142,128 | 11,993 | 50,491 |
| David Meek | 94,521 | 1,166,389 | — | — | 1,134,252 | — | — |
| Laurie Stelzer | 30,388 | 549,111 | 3,799 | 68,648 | 410,244 | — | — |
| Faheem Hasnain | 52,144 | 2,053,907 | 3,572 | 44,078 | 668,592 | — | — |
| Aaron I. Davis | 30,013 | 517,860 | 2,507 | 30,936 | 390,240 | 11,000 | 64,460 |
| Carol Gallagher, Pharm.D. | 1,065 | 21,279 | 11,719 | 234,146 | 153,408 | — | — |
| Craig Johnson | 43,013 | 1,468,940 | 2,507 | 30,936 | 546,240 | 11,000 | 64,460 |
| Maya Martinez-Davis | 22,513 | 381,060 | 2,507 | 30,936 | 300,240 | 11,000 | 64,460 |
| Bruce L.A. Carter, Ph.D. | 15,013 | 605,360 | 2,507 | 30,936 | 210,240 | 11,000 | 64,460 |
| Julie M. Cherrington, Ph.D. | 5,013 | 61,860 | 2,507 | 30,936 | 90,240 | — | — |
| Shalini Sharp | 5,013 | 61,860 | 2,507 | 30,936 | 90,240 | — | — |

| Name | Restricted Stock Units (#)[1] | Cash Consideration for Restricted Stock Units ($) | Potential Cash Payment for CVRs Issued with Respect to Restricted Stock Units ($) | Performance-Vesting Restricted Stock Units (#) | Cash Consideration for Performance-Vesting Restricted Stock Units ($)[2] | Potential Cash Payment for CVRs Issued with Respect to Performance-Vesting Restricted Stock Units ($) |
|---|---|---|---|---|---|---|
| Charles M. Baum, M.D., Ph.D. | 133,232 | 7,727,456 | 1,598,784 | — | — | — |
| James Christensen, Ph.D. | 94,618 | 5,487,844 | 1,135,416 | 16,050 | — | — |
| Alan Sandler, M.D. | 62,297 | 3,613,226 | 747,564 | — | — | — |
| Ben Hickey | 88,500 | 5,133,000 | 1,062,000 | 16,050 | — | — |
| John Moriarty, Jr., J.D. | 71,660 | 4,156,280 | 859,920 | — | — | — |
| Aaron Ondrey | 12,726 | 738,108 | 152,712 | 8,412 | 487,896 | 100,944 |
| David Meek | — | — | — | — | — | — |
| Laurie Stelzer | — | — | — | — | — | — |
| Faheem Hasnain | 6,333 | 367,314 | 75,996 | — | — | — |
| Aaron I. Davis | 4,444 | 257,752 | 53,328 | — | — | — |
| Carol Gallagher, Pharm.D. | 7,555 | 438,190 | 90,660 | — | — | — |
| Craig Johnson | 4,444 | 257,752 | 53,328 | — | — | — |
| Maya Martinez-Davis | 4,444 | 257,752 | 53,328 | — | — | — |

COMPLAINT

| | | | | | |
|---|---|---|---|---|---|
| Bruce L.A. Carter, Ph.D. | 4,444 | 257,752 | 53,328 | — | — | — |
| Julie M. Cherrington, Ph.D. | 4,444 | 257,752 | 53,328 | — | — | — |
| Shalini Sharp | 5,252 | 304,616 | 63,024 | — | — | — |

43.     In addition, certain employment agreements with certain Mirati executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Tax Reimbursement ($)[5] | Total ($) |
|---|---|---|---|---|---|
| Charles M. Baum, M.D., Ph.D. | 2,862,329 | 9,387,260 | 34,000 | — | 12,283,589 |
| James Christensen, Ph.D. | 2,205,646 | 7,729,659 | 25,500 | — | 9,960,805 |
| Alan Sandler, M.D. | 1,250,625 | 5,015,990 | 25,500 | 1,389,053 | 7,681,168 |
| Aaron Ondrey | 1,245,000 | 1,843,703 | 25,500 | — | 3,114,203 |
| David Meek | 5,104,580 | — | — | — | 5,104,580 |
| Laurie Stelzer | — | 114,326 | — | — | 114,326 |

44.     The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Proposed Transaction is not in the best interests of Mirati, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

46.    On November 6, 2023, the Mirati Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

47.    Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

a.   Adequate information as to why the Board agreed to a transaction in which a significant portion of the consideration payable is in the form of a non-guaranteed CVR;

b.   Adequate information regarding the membership, duties, and the specific powers of the Transaction Committee, including if the Transaction Committee was empowered to veto a potential transaction not in the best interests of shareholders;

c.   Adequate information regarding the membership, duties, and the specific powers of the New Transaction Committee, including if the New Transaction Committee was empowered to veto a potential transaction not in the best interests of shareholders;

d.   Adequate information regarding why the New Transaction Committee was not composed solely of independent and disinterested Board members;

e.   Whether the confidentiality agreements entered into by the Company with BMS differed from any other unnamed confidentiality agreement entered into

between the Company and potentially interested third parties (if any), and if so, in all specific manners;

f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including BMS, would fall away; and

g.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Mirati's Financial Projections*

48.    The Definitive Proxy Statement fails to provide material information concerning financial projections for Mirati provided by Mirati management to the Board and/or Centerview and relied upon by Centerview in its analyses.   The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

49.    Notably the Definitive Proxy Statement reveals that as part of its analyses, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Mirati, including the Management Projections and probabilities of success relating to Mirati and the probability of realizing the Milestone Payment under the CVR Agreement prepared by Mirati's management and furnished to Centerview by

Mirati for the purposes of Centerview's analysis, which are collectively referred to in this summary of Centerview's opinion as the "Internal Data."

50.     Therefore, the Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Mirati management provided to the Board and/or Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

51.     With regard to the *Management Projections (Risk Adjusted)* provided by Centerview Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

   a. Total Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically, "current and future upfront and milestone payments related to Mirati's products and programs; and

   b. A definition for EBIT, as well as all underlying inputs, metrics, and assumptions used to calculate this metric.

52.     With regard to the *Unlevered Free Cash Flow* set of Projections created by Centerview at the direction of Mirati management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

   a. A definition for EBIT, as well as all underlying inputs, metrics, and assumptions used to calculate this metric

53.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview_

56.     In the Definitive Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57.     With respect to the _Analysis of Consideration_ analysis, the Definitive Proxy Statement fails to disclose the following:

   a.  The specific inputs, metrics,  and assumptions used to determine the utilized discount rate range of 10.5% - 12.0%; and

   b.  Mirati's weighted average cost of capital utilized, and the specific inputs, metrics, and assumptions used to calculate the same.

58.     With respect to the _Selected Public Company Analysis_, the Definitive Proxy Statement fails to disclose the following:

   a.  The specific inputs, metrics,  and assumptions used to determine the utilized reference range of EV/2027E Revenue Multiples of 3.0x to 5.0x; and

   b.  The number of fully-diluted outstanding shares of Mirati common stock as of October 6, 2023 utilized.

59.     With respect to the *Selected Precedent Transactions Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific date on which each selected precedent transaction closed;

      b.   The aggregate value of each selected precedent transaction;

      c.   The specific inputs, metrics, and assumptions used to determine the utilized reference range of 4-Year Forward Revenue Multiples of 5.0x to 9.5x; and

      d.   The number of fully-diluted outstanding shares of Mirati common stock as of October 6, 2023 utilized.

60.     With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10.5% to 12.0%;

      b.   Mirati's weighted average cost of capital utilized, and the specific inputs, metrics,  and assumptions used to calculate the same;

      c.   The implied terminal value for Mirati, calculated;

      d.   The specific inputs, metrics,  and assumptions used to determine that Mirati's unlevered free cash flows would decline in perpetuity after December 31, 2044 at a rate of free cash flow decline of 80% year-over-year (with the exception of platform, overhead research and development, general and administrative cash flows, items for which a 0% perpetuity growth rate was assumed); and

      e.   The number of fully-diluted outstanding shares of Mirati common stock as of October 6, 2023 utilized.

61.     With respect to the *Analyst Price Target Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific price targets analyzed; and

      b.   The specific Wall Street firms that generated the analyzed price targets.

62.   With respect to the *Precedent Premiums Paid Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific premia analyzed; and

      b.   The specific inputs, metrics, and assumptions used to determine the utilized range of 60% to 100% to Mirati's closing stock price on October 4, 2023.

63.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Mirati stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

65.   Plaintiff repeats all previous allegations as if set forth in full herein.

66.   Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

68.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

72.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Mirati's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

77. The Individual Defendants acted as controlling persons of Mirati within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Mirati to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Mirati and all of its employees. As alleged above, Mirati is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 7, 2023

**BRODSKY SMITH**

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT